UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-01349

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| BRIXMOR HOLDINGS 11 SPE, LLC, a | : |
| Delaware limited liability company; and | : |
| | : |
| WFM-WO, INC., a Delaware corporation; | : |
| | / |
| Defendants. | |

_____

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, BRIXMOR HOLDINGS 11 SPE, LLC, a Delaware limited liability company; and WFM-WO, INC., a Delaware corporation (sometimes referred to as "Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant BRIXMOR HOLDINGS 11 SPE, LLC, owns the real estate and the improvements thereon described as:

Lots 6 and 9, Superior Marketplace, Filing No. 3, as per the plat recorded January 11, 2000

under Reception No. 2013852, County of Boulder, State of Colorado;

Lots 1, 2, 3 and 6, Superior Marketplace, Filing No. 5, as per the plat recorded October 11, 2001 at Reception No. 2206916, County of Boulder, State of Colorado;

Lots 2 and 3, Superior Marketplace, Filing No. 6, as per the plat recorded August 6, 2007 at Reception No. 2874252, County of Boulder, State of Colorado;

(collectively "the Property").

3.     Defendant WFM-WO, INC.'s store, Whole Foods, is located on the Property, with an address of 300 Center Drive, Superior, Colorado 80027 ("Whole Foods").

4.     OfficeMax is located on the Property with an address of 410 Center Drive, Superior, Colorado 80027 ("OfficeMax").

5.     Petsmart is located on the Property with an address of 402 Center Drive, Superior, Colorado 80027 ("Petsmart").

6.     TJMaxx is located on the Property with an address of 510 Marshall Road, Superior, Colorado 80027 ("TJMaxx").

7.     Ulta is located on the Property with an address of 530 Marshall Road, Superior, Colorado 80027 ("Ulta").

8.     Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of Property.  The Defendants' Property and Whole Foods are located in and do business within this judicial district.

9.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

10.     Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28

CFR 36.201(a) and 36.104.

11.    The Property is a shopping center.

12.    The Property is a place of public accommodation.

13.    Whole Foods is a grocery store and a sales establishment.

14.    Whole Foods is a place of public accommodation.

15.    OfficeMax, Petsmart, Ulta and TJMaxx are sales establishments.

16.    OfficeMax, Petsmart, Ulta and TJMaxx are places of public accommodation.

17.    Defendants are responsible for complying with the obligations of the ADA.

18.    The building Whole Foods currently occupies on the Property was constructed after the year 2002.

19.    The buildings and improvements that OfficeMax and Petsmart currently occupy were constructed on the Property after the year 1999.

20.    Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs and hands, and requires the use of a wheelchair for mobility.

21.     Mr. Nekouee travels to the Longmont-Firestone-Boulder area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

22.     On his way to the mountains and sight-seeing, Fred Nekouee visited the Property which forms the basis of this lawsuit on October 1, 2019; February 5, 2019; May 10, 2019; and March 4, 2020; and he bought goods and sought to avail himself of the goods and services at the Property on such dates.

23.     Fred Nekouee visited and bought goods at Michaels near the Property on February 5, 2019; May 10, 2019; October 1, 2019; and on March 4, 2020.

24.     Fred Nekouee visited and bought fruit at Whole Foods on the Property on October 1, 2019 and on March 4, 2020.

25.     Fred Nekouee visited and bought goods at Ulta on the Property on February 5, 2019 and on May 10, 2019.

26.     Fred Nekouee visited and bought goods at TJMaxx on the Property on February 5, 2019.

27.     Fred Nekouee visited and bought goods at OfficeMax on the Property on March 4, 2020.

28.     Fred Nekouee visited and bought goods at Petsmart on the Property on March 4, 2020.

29.     Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018; May 8, 2019; October 2, 2019; and March 4, 2020.

30.     Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

31.     Fred Nekouee also visited the Longmont, Colorado area from February 3-7, 2019.

32.     Fred Nekouee plans to return to Property to avail himself of the goods and services offered to the public at the Property and Whole Foods.

33.     The Plaintiff has definite plans to return to the area and to the Property and Whole Foods in late September or early October 2020.

34.     The Property and Whole Foods are on the way from the heavy equipment auction and dealerships he visits to the mountains and sight-seeing.

35.     The Plaintiff likes the fruit and grocery items for sale at Whole Foods on the

Property.

36.    The Plaintiff plans to return to Whole Foods to shop.

37.    The Plaintiff likes to shop at OfficeMax, Petsmart, Ulta and TJMaxx for personal items and gifts.

38.    The Plaintiff plans to return to OfficeMax, Petsmart, Ulta and TJMaxx to shop.

39.    For the reasons set forth in paragraphs 21-38 and 52, Fred Nekouee plans to return to the Property and to Whole Foods.

40.    The Plaintiff has encountered architectural barriers at the Property.

41.    The barriers to access that the Plaintiff encountered at the Property have endangered his safety, impaired his ability to access Property, and have impaired his use of the restrooms there.

42.    The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

43.    The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

44.    Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

45.    On his visit to the Property, the Plaintiff encountered excessively steep slopes and changes in level in its parking lot and walking surfaces.

46.    The slope of the access ramp flares in front of Whole Foods is steeper than 1:10.

47.    The running slope of the access ramp in front of the main entrance to Whole Foods is steeper than 1:12.

48.    The parking spaces for disabled patrons in front of OfficeMax have running slopes

that are steeper than 1:48 and steeper than 3.1%.

49.     The Plaintiff encountered and observed barriers to access in the men's restroom in Whole Foods; and so, he also tried to use the women's restroom in Whole Foods, in which women's restroom he also encountered and observed barriers to access.

50.      The Plaintiff is deterred from visiting the Property even though he enjoys its goods and services, because of the difficulties he will experience there until the Property is made accessible to him in a wheelchair.

51.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Property as described but not necessarily limited to the allegations in paragraph 58 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

52.     Fred Nekouee desires to visit the Property not only to avail himself of the goods and services available at Property but to assure himself that the Property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Property without fear of discrimination.

53.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

54.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

55.     Physical conditions that exist at the Property are accurately described in each romanette "(i)" in each lettered subparagraph of paragraph 58 below

56.     Preliminary inspections of Property show that violations of the ADA exist as set forth in paragraph 58 below.

57.     The violations of the ADA that Fred Nekouee personally encountered and observed at the Property include, but are not limited to, those set forth in paragraph 58 below.

58.     At the Property:

**PARKING**

a.  (i) The access ramp flare near the entrance to Whole Foods, shown in the photograph below, has a change in level greater than 0.5 inches.   (ii) This change of level of this access ramp flare is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010, ADAAG §§ 403.3 and 303.3.   (iii) Due to this change in level, the Plaintiff had to maneuver his wheelchair to avoid it and to keep his wheelchair from getting stuck and made unstable.   (iv) The action required to reduce this change in level is easily accomplishable and able to be carried out without much difficulty or expense.





b.   (i) The running slope of the access ramp in front of Whole Foods, shown in the photograph below, is steeper than 1:12 and is steeper than 9.4%.   (ii) The running slope of this access ramp in front of Whole Foods is steeper than 1:12 and steeper than 9.4%, in violation of Federal Law 2010; ADAAG § 405.2.   (iii) The slope of this access ramp in

front of Whole Foods made the Plaintiff's wheelchair unstable.   (iv) The action required

to reduce the slope of this access ramp is easily accomplishable and able to be carried out

without much difficulty or expense.



c.   (i) The slope of the curb ramp flare in front of Whole Foods, shown in the

photograph below, is steeper than 1:10 and steeper than 11%.   (ii) The slope of this curb

ramp flare in front of Whole Foods, is steeper than 1:10 and is as steep as about 20%, in

violation of Federal Law 2010; ADAAG § 406.3.   (iii) The Plaintiff encountered this curb

ramp flare while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The

action required to reduce the slope of this curb ramp flare is easily accomplishable and able

to be carried out without much difficulty or expense.



   **d.**  (i) The slope of the curb ramp flare in front of Whole Foods, shown in the photograph below, is steeper than 1:10 and steeper than 11%.   (ii) The slope of this curb ramp flare in front of Whole Foods, is steeper than 1:10 and is steeper than 11%, in violation of Federal Law 2010; ADAAG § 406.3.   (iii) The Plaintiff encountered this curb ramp flare while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this curb ramp flare is easily accomplishable and able to be carried out without much difficulty or expense.



e.   (i) The parking space in front of OfficeMax, shown in the photograph below, has a running slope steeper than 1:48 and that is steeper than 3.1%.   (ii) The running slope of this parking space for disabled patrons has a running slope that is steeper than 1:48 and that is steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) The Plaintiff encountered the running slope in this parking space while unloading from and loading back into his vehicle, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





  **f.** (i) The parking space in front of OfficeMax, shown in the photograph below, has

a running slope and a cross slope that are steeper than 1:48 and that are steeper than 3.1%.

(ii) The running slope and the cross slope of this parking space for disabled patrons is

steeper than 1:48 and that are steeper than 3.1%, in violation of Federal Law 2010;

ADAAG § 502.4.   (iii) The Plaintiff encountered the running slope and the cross slope in

this parking space while moving in his wheelchair, and they made his wheelchair unstable.

(iv) The action required to reduce the slopes of this parking space is easily accomplishable

and able to be carried out without much difficulty or expense.





g.     (i) The middle section of the access aisle in front of OfficeMax, shown in the photograph below, has a running slope that is steeper than 1:48 and steeper than 3.1%.   (ii) The running slope of the middle section of this access aisle is steeper than 1:48      and that is steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) The

Plaintiff encountered the running slope of this access aisle while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.





h.   (i) The counter slope of the gutter that adjoins the road surface in front of OfficeMax is steeper than 1:20 and is steeper than 6%.   (ii) The counter slope of the gutter that adjoins the road surface in front of OfficeMax is steeper than 1:20 and is as steep as about 19%, in violation of Federal Law 2010; ADAAG § 406.2.   (iii) The Plaintiff

encountered the steep counter slope of this gutter while moving in his wheelchair, and it made his wheelchair unstable.    (iv) The action required to reduce the counter slope of this gutter is easily accomplishable and able to be carried out without much difficulty or expense.

i.    (i) The parking space in front of Petsmart, shown in the photograph below, has a running slope that is steeper than 1:48 and that is steeper than 3.1%.    (ii) The running slope of this parking space for disabled patrons has a running slope that is steeper than 1:48 and that is steeper than 3.1%, in violation of Federal Law 2010; ADAAG § 502.4.    (iii) The Plaintiff encountered the running slope in this parking space while unloading from and loading back into his vehicle, and it made his wheelchair unstable.    (iv) The action required to reduce the running slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.





j.    (i) The middle section of the access aisle in front of Petsmart, shown in the photograph below, has a running slope that is steeper than 1:48 and that is steeper than 3.1%.   (ii) The running slope of the middle section of this access aisle is steeper than 1:48 and is as steep as about 5%, in violation of Federal Law 2010; ADAAG § 502.4.   (iii) The Plaintiff encountered the running slope of this access aisle while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the running slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.





k.    (i) The cross slope of the walking surface in front of Petsmart, just to the right of

the entrance as one faces the entrance from its exterior, is steeper than 1:48 and is steeper

than 3.1%.   (ii) The cross slope of this walking surface in front of Petsmart is steeper than

1:48 and is as steep as about 7%, in violation of Federal Law 2010; ADAAG § 403.3.   (iii)

While moving in his wheelchair from OfficeMax to Petsmart, the Plaintiff encountered the

steep cross slope of this walking surface, and it made his wheelchair unstable.   (iv) The

action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

l.      (i) The change in level of the walking surface between OfficeMax and Petsmart, shown in the photographs below, is greater than 0.5 inches.   (ii) This change of level is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010; ADAAG §§ 403.3 and 303.3.   (iii) The Plaintiff encountered this change of level on this walking surface while moving in his wheelchair, and it stopped the forward movement of his wheelchair, and he required assistance to move over it in his wheelchair.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.



m.    (i) The change in level of the walking surface between TJMaxx and Ulta, shown in the photographs below, is greater than 0.5 inches.   (ii) This change of level is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010; ADAAG §§ 403.3 and 303.3.   (iii) The Plaintiff encountered this change of level of this walking surface while moving in his wheelchair, and it stopped the forward movement of his wheelchair, and he required assistance to move over it in his wheelchair.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





n.      (i) The change in level from the asphalt cross walk in front of Ulta to the concrete gutter, shown in the photographs below, is greater than 0.5 inches.  (ii) This change of level is greater than 0.5 inches and is about 1 inch, in violation of Federal Law 2010; ADAAG §§ 403.3 and 303.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level and it stopped the forward movement of his wheelchair, and he required assistance to move over this change of level.   (iv) The action required to

reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.





    o.   (i) The running slope of the access ramp in front of Ulta, shown in the photograph below, is steeper than 1:12 and is steeper than 9.4%.  (ii) The running slope of this access

ramp is steeper than 1:12 and steeper than 15%, in violation of Federal Law 2010; ADAAG § 405.2.   (iii) Due to its steep slope, the Plaintiff required assistance to ascend and to descend this access ramp in his wheelchair.   (iv) The action required to reduce the slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



p.   (i) The running slope of the access ramp in front of TJMaxx, shown in the photograph below, is steeper than 1:12 and steeper than 9.4%.   (ii) The running slope of this access ramp is steeper than 1:12 and steeper than about 11%, in violation of Federal Law 2010; ADAAG § 405.2.   (iii) Due to its steep slope, the Plaintiff required assistance to ascend and to descend this access ramp in his wheelchair.   (iv) The action required to

reduce the slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.





**ENTRANCE DOOR TO WHOLE FOODS**

q.   (i) The time for the entrance door of Whole Foods to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The time for the

entrance door of Whole Foods to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short time it takes for this door to close from an open position, this entrance door closed on the Plaintiff's wheelchair before he could make it all of the way through this doorway.   (iv) The action required to adjust this door's closer is easily accomplishable and able to be carried out without much difficulty or expense.

### MEN'S RESTROOM IN WHOLE FOODS

r.    (i) The force needed to open the entrance door to the men's restroom is greater than 5 pounds.   (ii) The force necessary to open the entrance door to the men's restroom is greater than 5 pounds and is about 9 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010; ADAAG § 404.2.9. (iii) Due to the force necessary to open this door, the Plaintiff required assistance to enter the men's restroom.   (iv) The action required to adjust the closer to this door is easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) The time for the entrance door to the men's restroom in Whole Foods to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds. (ii) The time for the entrance door to the men's restroom in Whole Foods to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short time it takes for this door to close from an open position, this entrance door closed on the Plaintiff's wheelchair before he could make it all of the way through this doorway. (iv) The action required to adjust this door's closer is easily accomplishable and able to be

carried out without much difficulty or expense.

t.   (i) The front of the counter surface for the sinks in the men's restroom in Whole Foods is higher than 34 inches above the floor.   (ii) The front of the counter surface for the sinks in the men's restroom in Whole Foods is higher than 34 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 606.3.   (iii) Due to the height of this counter for the sinks above the floor, it was difficult for the Plaintiff to use the sink.   (iv) The action required to lower this counter for the sinks is easily accomplishable and able to be carried out without much difficulty or expense.

u.   (i) In the men's restroom in Whole Foods, the clear floor space under the sink is blocked by a trash can and is less than 30 inches.   (ii) The clear floor space under the sink is less than 30 inches, in violation of Federal Law 2010; ADAAG §§ 606.2 and 305.5. (iii) Due to this lack of clear floor space under the sink, the Plaintiff could not make a forward approach in his wheelchair to use this sink.   (iv) The action required to replace the trash can under the sink with a trash can of a smaller diameter is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the men's restroom in Whole Foods, the lavatory drain and supply pipes under the sinks are not insulated.   (ii) The drain and supply pipes under these sinks are not insulated, as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 606.5.   (iii) Due to the lack of insulation on these drain and supply pipes, the Plaintiff risked skin burns and injury to his legs when he used one of the sinks.   (iv) The action required to insulate these drain and supply pipes is easily accomplishable and able to be carried out without much difficulty or expense.



w.   (i) In the men's restroom in Whole Foods, the space between the top of the side wall grab bar and the bottom of the toilet paper dispenser above it is less than 12 inches. (ii) The space between the top of this side wall grab bar and the bottom of the toilet paper dispenser above it is less than 12 inches and is only about 9 inches, in violation of Federal Law 2010; ADAAG § 609.3.   (iii) Due to the space between the top of this side wall grab bar and the bottom of the toilet paper dispenser above it, the Plaintiff had difficulty using the side wall grab bar to transfer himself from his wheelchair to the toilet and back again. (iv) The action required to relocate the toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the men's restroom in Whole Foods, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 47

inches above the finish floor, in violation of Federal Law 2010; ADAAG § 603.3.   (iii)

Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not

see his full face in this mirror while sitting in his wheelchair.   (iv) The action required to

relocate this mirror is easily accomplishable and able to be carried out without much

difficulty or expense.

     y.    (i) In the men's restroom in Whole Foods, the liquid soap dispenser outlet is

higher than 48 inches above the floor.   (ii) This liquid soap dispenser is higher than 48

inches above the finish floor and is about 55 inches above the finish floor and outside of

the reach range of an individual in a wheelchair, in violation of Federal Law 2010; ADAAG

§ 308.2.2.   (iii) Due to its height above the floor, from his wheelchair, the Plaintiff tried

but could not reach this dispenser to obtain soap from it.   (iv) The action required to

relocate this soap dispenser is easily accomplishable and able to be carried out without

much difficulty or expense.

**WOMEN'S RESTROOM IN WHOLE FOODS**

     z.    (i) The force needed to open the entrance door to the women's restroom is greater

than 5 pounds.   (ii) The force necessary to open the entrance door to the women's restroom

is greater than 5 pounds and is about 9 pounds, pertaining to the continuous application of

force necessary to fully open a door, in violation of Federal Law 2010; ADAAG § 404.2.9.

(iii) Due to the force necessary to open this door, the Plaintiff required assistance to enter

the women's restroom.   (iv) The action required to adjust the closer to this door is easily

accomplishable and able to be carried out without much difficulty or expense.

     aa.    (i) The time for the entrance door to the women's restroom in Whole Foods to

close from an open position of 90 degrees to 12 degrees from the latch is less than 5

seconds.   (ii) The time for the entrance door to the women's restroom in Whole Foods to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds and is only about 3 seconds, in violation of Federal Law 2010; ADAAG § 404.2.8.1.   (iii) Due to the short time it takes for this door to close from an open position, this entrance door closed on the Plaintiff's wheelchair before he could make it all of the way through this doorway.   (iv) The action required to adjust this door's closer is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the women's restroom in Whole Foods, the clear floor space under the sink is blocked by a trash can and is less than 30 inches.   (ii) The clear floor space under the sink is less than 30 inches, in violation of Federal Law 2010; ADAAG §§ 606.2 and 305.5. (iii) Due to this lack of clear floor space under the sink, the Plaintiff could not make a forward approach in his wheelchair to use this sink.   (iv) The action required to replace the trash can under the sink with a trash can of a smaller diameter is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the women's restroom in Whole Foods, the space between the top of the side wall grab bar and the bottom of the toilet paper dispenser above it is less than 12 inches.   (ii) The space between the top of this side wall grab bar and the bottom of the toilet paper dispenser above it is less than 12 inches and is only about 9 inches, in violation of Federal Law 2010; ADAAG § 609.3.   (iii) Due to the space between the top of this side wall grab bar and the bottom of the toilet paper dispenser above it, the Plaintiff had difficulty using the side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to relocate the toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the women's restroom in Whole Foods, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 45 inches above the finish floor, in violation of Federal Law 2010; ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror while sitting in his wheelchair.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In the women's restroom in Whole Foods, the lavatory drain and supply pipes under the sinks are not insulated.   (ii) The drain and supply pipes under these sinks are not insulated, as shown in the photograph below, in violation of Federal Law 2010; ADAAG § 606.5.   (iii) Due to the lack of insulation on these drain and supply pipes, the Plaintiff risked skin burns and injury to his legs when he used one of the sinks.   (iv) The action required to insulate these drain and supply pipes is easily accomplishable and able to be carried out without much difficulty or expense.



59.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

60.     The discriminatory violations described in paragraph 58 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

61.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

62.     Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

63.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

64.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

65.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

66.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals

who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

67.    Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

68.    Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property, Whole Foods, and the parking lot, access aisles and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.    The Court issue a Declaratory Judgment that determines that the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.    Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services,

facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792; Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*